UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Eastern District of Kentucky
**FILED**

FEB 24 2021

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO. 0:20-CR-10-DLB-EBA

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                        **PLEA AGREEMENT**

CORY DAVID HOSKINS                                          DEFENDANT

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 6 and 27 of the Indictment, charging violations of 49 U.S.C. § 5124, the Hazardous Materials Transportation Act (HMTA). Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 1 through 5 and 7 through 26.

2. The essential elements of Counts 6 and 27 are:

    (a) The Defendant is a person who

    (b) Willfully or recklessly

    (c) Violated HMTA or a regulation under HMTA.

3. As to Counts 6 and 27, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant, who resided and did business within the Eastern District of Kentucky, founded and operated Advanced Tenorm Services, and was in the business of contracting for the transport and disposal of material generated by the oil and gas exploration industry in 2015 and 2016.

(b) The Defendant was contacted by the President of Fairmont Brine Processing, LLC (Fairmont Brine), a plant that processed waste material generated by the oil and gas exploration industry in Fairmont, West Virginia, to transport, solidify, and dispose of LSA-1 material, otherwise referred to as "sludge" from the processing plant. The Defendant represented to Fairmont Brine verbally, via electronic communications, and with his company literature related to Advanced Tenorm Services, that he was capable of testing material for Radium 226 and 228 and could arrange for the transportation and disposal of such material in compliance with U.S. Department of Transportation regulations. The Defendant agreed to and was hired to transport, solidify, and dispose of 35 blue vacuum packed containers of sludge, each package holding up to 25 yards of the LSA-1 material.

(c) The Defendant understands and agrees the material was LSA-1, a Class 7 radioactive material, the lowest level of radioactive material in Class 7, which exceeded the exemption cutoffs according to the regulations. Among other things, the regulations required such material to be properly classified, labeled, carried and tracked with proper shipping papers, and transported by carriers with permits to do so, namely, Hazardous Materials Endorsements.

(d) The Defendant personally visited Fairmont Brine, was given access to test the material and saw that Waste Management had packaged the material in accordance with United States Department of Transportation (U.S. DOT) regulations. He saw and personally assessed the 35 blue vacuum-packed containers which were isolated on the Fairmont Brine premises and marked with yellow tape before entering into a contract with Fairmont Brine to remove them.

(e) The Defendant and the President of Fairmont Brine discussed the qualities of the material. Specifically, the Defendant was told that the sludge had been collecting in a pit over a period of months, contained radioactive material, and needed to be transported, solidified, and disposed of in accordance with the laws and regulations of the United States.

(f) The Defendant, while representing he was an expert in testing for Ra 226 and Ra 228 to Fairmont Brine, did not perform any tests or otherwise verify the level of radioactivity before offering the sludge into transport. The Defendant also did not prepare for or provide to carriers the proper shipping papers or communicate the

2

radioactive nature of the material being transported with labels or by any other means.

(g) The Defendant failed to transport the material via U.S. DOT compliant trucks. He did not hire drivers with Hazardous Materials endorsements, he did not placard or communicate, in any way, the trucks or containers to indicate the radioactive nature of the material despite knowing the sludge was LSA-1. At least one driver asked the Defendant whether the transport of the material required "a HAZMAT endorsement" and the Defendant told him it did not.

(h) The Defendant represented that the material he contracted to transport, solidify, and dispose of was not hazardous and omitted his knowledge of its radioactive character in his communications with trucking companies and drivers.

(i) The Defendant arranged for and ensured the completion of the transport of approximately 46 shipments of unmarked Class 7, LSA-1 radioactive material between July 21, 2015, and August 27, 2015, in West Virginia and Kentucky, knowing the material to be LSA-1 which exceeded excepted levels under the applicable federal regulations and with the knowledge that his conduct was unlawful.

(j) The Defendant's conduct violated a number of regulations under the HMTA which appear at 49 CFR §§ 171-180.

4. The statutory punishment for a violation of 49 U.S.C. § 5124 is imprisonment for not more than 5 years, a fine of not more than $250,000.00, and a term of supervised release of not more than 3 years. A mandatory special assessment of $100 per count of conviction applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2018, manual, will determine the Defendant's guidelines range.

3

      (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes all activity related to the unlawful transportation of radioactive material from Fairmont Brine Processing located in Fairmont, West Virginia in 2015.

      (c) Pursuant to U.S.S.G. § 2Q1.2(a), the base offense level is 8.

      (d) The United States recommends a 4-level enhancement pursuant to U.S.S.G. § 2Q1.2(b)(1)(A) and application note 5. The Defendant disagrees and objects to this enhancement.

      (e) Pursuant to U.S.S.G § 2Q1.2(b)(4), increase the offense level by 4 levels where the offense involved transportation, treatment, storage, or disposal without a permit.

      (f) Pursuant to U.S.S.G § 2Q1.2(b)(7), increase the offense level by 2 levels where the Defendant is convicted under 49 U.S.C. § 5124.

      (g) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

      (h) No agreement exists about restitution.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Part K.

8. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing except, if the Court, at sentencing, applies an enhancement under U.S.S.G. §

4

2Q1.2(b)(1)(A), the Defendant reserves the right to appeal that application and any aspect of the sentence, as long as the term of imprisonment exceeds the advisory sentencing guidelines range assuming no application of U.S.S.G. § 2Q1.2(b)(1)(A). Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9. The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation

or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

12. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CARLTON S. SHIER, IV
ACTING UNITED STATES ATTORNEY

Date: 2/24/2021     By: _____
Tashena A. Fannin
Assistant United States Attorney

Date: 2-24-21       _____
Cory D. Hoskins
Defendant

Date: 2.24.21       _____
Christie A. Moore
Attorney for Defendant

7